# Exhibit 2

**STATE OF MINNESOTA**                                        **DISTRICT COURT**

**COUNTY OF ANOKA**                                   **TENTH JUDICIAL DISTRICT**

---

Jenna Kaltved,

                    Plaintiff,                               **ORDER FOR DISMISSAL**
      vs.                                         **OF PLAINTIFF'S COMPLAINT**

AmeriHome Mortgage Company,
LLC,
                                Court File No: 02-CV-24-1270

                    Defendant.

---

The above-captioned matter came on before the Honorable Jenny Walker Jasper, Anoka County District Court, July 25, 2024, on Defendant's Rule 12 Motion to Dismiss.

Plaintiff Jenna Kaltved appeared virtually representing herself pro se. Defendant AmeriHome Mortgage Company ("AmeriHome") appeared through its attorney, Addison Morgan, Esq.

Now, therefore, based upon the files, records and proceedings herein, the Court makes the following:

**ORDER**

1. Defendant AmeriHome's motion to dismiss Plaintiff's Complaint for failing to state a claim on which relief can be granted is **GRANTED**.

2. Plaintiff's Complaint is **dismissed with prejudice**.

3. The attached memorandum of law is incorporated herein by reference.

**THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                      **BY THE COURT**:

Walker Jasper, Jenny (Anoka Judge)    Digitally signed by Walker Jasper, Jenny (Anoka Judge) Date: 2024.09.04 16:13:09 -05'00'

_____

Jenny Walker Jasper
Judge of District Court

1

## MEMORANDUM OF LAW

### Statement of Facts

Rule 12.02(e) motions turn solely on whether the complaint states a claim upon which relief may be granted. See *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000). For the purposes of Defendant's Rule 12 motion to dismiss, the Court accepts as true and will use the facts alleged in Plaintiff's Verified Complaint filed on March 13, 2024.

On December 28, 2021, Plaintiff entered into a written mortgage agreement. (Complaint at ¶ 6). Plaintiff acknowledges that this contract was with Onward Financing, which later sold the right to collect on the debt to AmeriHome Mortgage. (Ex. 1, Pg. 2). Plaintiff states that, relying on Generally Accepted Accounting Principles (GAAP) and Financial Accounting Standards Board (FASB) principles, she "conducted due diligence to ensure fairness, equal consideration and transparency in the alleged loan transaction." (Complaint at ¶ 7).

Plaintiff sent a Notice of Conditional Acceptance and Offer to Perform, along with an Affidavit of Facts: Verification and Validation of Debt to Defendant on September 25, 2023. (*Id*. at ¶ 8). The Notice was incorporated with Plaintiff's Complaint as Exhibit 1. Plaintiff sought comprehensive loan and account information, requesting that the Defendant verify the validity, origin, and ownership of the alleged debt and provide evidence of equal and adequate consideration in the transaction. (*Id*. at ¶ 10, 22). It purported to give Defendant "a reasonable amount of time" to provide the requested information. (*Id*. at ¶ 11).

On November 7, 2023, Plaintiff received Defendant's initial response containing a photocopy of the alleged financial agreement in question along with a copy of the transaction history of Plaintiff's account. (*Id*. at ¶ 12, 24). Plaintiff, not believing Defendant's documentation was sufficient, sent a Mortgage Follow Up Letter on December 1, 2023, seeking "full disclosure

of all material facts of the loan transaction." (*Id*. at ¶ 14, 27). On December 18, 2023, Plaintiff received a Mortgage Statement from Defendant. (*Id*. at ¶ 15). Subsequently, on January 5, 2024, Plaintiff received an Acknowledgment Letter from Defendant. (*Id*. at ¶ 16).

Plaintiff was not satisfied with the loan documentation information provided and initiated this action against Defendant in part questioning the consideration received as part of their contractual relationship with the original mortgage holder, Onward Financing.

<b>Analysis</b>

**I.**     **Standard of Review for Motion to Dismiss for Failure to State a Claim on which Relief may be Granted**.

Defendant moves the Court for dismissal of Plaintiff's Complaint for failure to state a claim on which relief may be granted pursuant to Minn. R. Civ. P. 12.02(e). Pleadings must "contain a short plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought.

The threshold showing plaintiffs must make "in order to survive a motion to dismiss under [12.02(e)] is minimal." *Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn. 2003). A reviewing court considers a motion to dismiss for failure to state a claim, it must "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003).

A complaint will be dismissed only "if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Bahr v. Capella University*, 788 N.W.2d 76, 80 (Minn. 2010). Therefore, a claim will only be sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief

3

demanded. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). Legal conclusions in a complaint are not binding on the court. See *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 235 (Minn. 2008).

Plaintiff, through her Complaint, proceeds under numerous causes of action: breach of the implied covenant of good faith and fair dealing (Count I); breach of implied contract from acquiescence (Count II); lack of consideration (Count III); failure to prove bona fide loss (Count IV); lack of bona fide holder status (Count V); unfair business practice (Count VI); estoppel (Count VII); and removal, release, and revocation of lender's rights, titles, and interest (Count VIII). The question is whether Plaintiff has supplied sufficient facts which, when viewing them in the light most favorable to her, support the relief requested under those claims.

## II.    Plaintiff's Standing and Availability of Relief for the Causes of Action Stated in the Complaint.

The claims forwarded by Plaintiff, while separate, hinge on whether she has standing to bring this action. Any failure on the part of Defendant to provide her with full disclosures or verifications or to respond to and involve her in the transfer of the mortgage, leading to a breach the parties' contract among other things, depends on Plaintiff's nexus to the debt transfer. Plaintiff's allegations are based upon her questioning the validation of the nature of the assignment of the debt between Onward Financing and AmeriHome Mortgage. See Exhibit 1.

A plaintiff may have standing in two ways: "either the plaintiff has suffered some 'injury-in-fact', or the plaintiff is the beneficiary of some legislative enactment granting standing." *Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn. 2007) (citing *Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 221 N.W.2d 162, 165 (Minn. 1974)). To demonstrate an "injury-in-fact," the plaintiff must show "a concrete and particularized invasion of a legally protected interest." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

A plaintiff bringing a show-me-the-note claim generally argues that, because the entity that holds their mortgage is not the same as the entity that holds their note, the mortgage on the home or the foreclosure of that mortgage is invalid. This type of argument has been summarily dismissed throughout Minnesota caselaw, including by the Minnesota Supreme Court in *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487 (Minn. 2009).

In *Jackson*, the Minnesota Supreme Court held that "any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement." 770 N.W.2d at 500. The court reaffirmed the principle that "legal and equitable title can be separated" and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, "[i]t is a matter between them alone, and does not concern the mortgagor," and such a transaction does "not affect the interests of the mortgagor, and he could not object." *Id*.

Here, Plaintiff's Complaint and the allegations therein appear to proceed under this "show-me-the note" theory of relief. On page 5 in Exhibit 1 of her Complaint, the Notice of Conditional Acceptance and Offer to Perform, she explicitly requests the "complete original agreement/note with a wet ink signature in order to perform… and any copy of a note sent due to an inability to locate the original note with a wet ink signature would be a forgery." This defense, that Defendant must show that they actually have the right to collect the amounts owed under the Note, falls under the exact "show-me-the-note" reasoning that has been resoundingly rejected by the courts. Plaintiff claims that Defendant did not verify the validity, origin and ownership of the alleged debt or provide evidence of valid consideration in the transaction, which should effectively result in injunctive relief via recission of the mortgage. Each of Plaintiff's claims

stem from a perceived right to demand information and desire to call into question the debt's validity.

The fact that Plaintiff sent various letters to Defendant seeking information did not legally obligate the latter to provide that information or perform in any other manner. The parties were never in privity of contract as evidenced by Exhibit 1. Plaintiff and Onward Financing, LLC executed the original Mortgage and Note and Defendant is not shown to be signatory to those agreements. The responses given by Defendant communicating current ownership of the Note, while unsatisfactory to Plaintiff, did not amount to any formation of a contract and were not deficient because Defendant was not under a duty to provide anything further.

The extent of the injuries Plaintiff alleges she has suffered are "potential negative credit consequences," and that "Defendant's actions have caused uncertainty of the true nature of the transaction, negatively impacting the Plaintiff." (See Complaint at ¶¶ 33, 39, 45, 51, 57, and 61). These are not cognizable injuries; the alleged harm is too remote and broadly defined. She was not a party to the transfer of the Mortgage and Note. Plaintiff has not demonstrated any real, concrete injury outside of what *might* happen in the future. In the absence of evidence indicating otherwise, Plaintiff may not challenge the transfer and she has not provided the Court with a valid theory of relief in which to proceed.

For these reasons and those listed below, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### III. Plaintiff's Count 1 - Breach of the Implied Covenant of Good Faith and Fair Dealing.

In Minnesota, every contract includes with it an "implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other's party's performance of the contract. *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn.

1995) (quoting *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984). To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty." *Minnwest Bank Central v. Flagship Properties LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004) (citing *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).

The implied covenant of good faith and fair dealing carries with it the need for a valid, enforceable contract to exist in order to be actionable. To violate this standard, there must be an agreement between two or more parties which establishes a duty to perform for one party, and the other unjustifiable hinders them from doing so. A claim for breach of the implied covenant of good faith and fair dealing is not an independent cause of action. Plaintiff has also not sufficiently shown what performance is being hindered and how. As her contract was with Onward Financing, not AmeriHome Mortgage, she cannot contest that Defendant has exhibited bad faith in refusing to perform or frustrating contractual duties and this cause of action fails.

## IV.    Plaintiff's Count II - Breach of Implied Contract from Acquiescence.

Where evidence fails to demonstrate that an express agreement was formed, Minnesota law provides that a contract may be implied "from the circumstances or acts of the parties." *Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild*, 225 N.W.2d 261, 263 (Minn. 1975). The existence of an implied contract is a "question to de determined by the trier of fact as an inference of facts to be drawn from the conduct and statements of the parties." *Roberge v. CambridgeCo-Op. Creamery*, 79 N.W.2d 142 (1956).

A contract is formed when two or more parties exchange bargained-for promises, manifest mutual assent to the exchange, and support their promises with consideration. *Medical*

*Staff of Avera Marshall Regional Medical Center v. Avera Marshall*, 857 N.W.2d 695, 701 (Minn. 2014).

Here, there was no express written or otherwise agreed-upon contract between the parties. The only extrinsic evidence of the party's actions that Plaintiff provides lending to her argument of an implied contract are her assertions that she and Defendant "engaged in private correspondence" whereby AmeriHome "implicitly agreed to cooperate" with her requests. There were no bargained-for promises exchanged, nor mutual assent to any exchange. Further, Plaintiff has not shown that there was any consideration to support the parties' supposed promises, despite her allegation that the agreement between AmeriHome Mortgage and Onward Financing should be void for the same reason. Defendant's mere indication that that it would provide Plaintiff with some information related to the loan transaction with Onward Financing falls well short of establishing an implied contract.

## V.      Plaintiff's Count III - Lack of Consideration

Consideration is an essential component to the formation of a valid contract. It "requires that one party to a transaction voluntarily assume an obligation on the condition of an act or forbearance by the other party." *Id*. (quoting *U.S. Sprint Commc'ns Co., Ltd. v. Comm'r of Revenue*, 578 N.W.2d 752, 754 (Minn. 1998)).

In order to challenge a contract for lack of consideration, a plaintiff is required to establish the elements of a binding contract, whether that agreement is express or implied. Plaintiff was not a party to the contract between Defendant and Onward Financing and thus cannot challenge it for lack of consideration. Plaintiff additionally has not established a contract being formed with Defendant, and even if she had, there was no reciprocal promise on her end for the exchange of information requested. Therefore, Plaintiff's claim fails.

**VI.**    **Plaintiff's Count IV - Failure to Prove Bona Fide Loss and Count V – Lack of Bona Fide Holder Status.**

These claims purport that Defendant lacks the "bona fide holder status" that is necessary for a loan servicer to enforce a debt under a Mortgage and evidenced by a Note.

This fact may be determined through publicly available resources, which the Court has the access and ability to reference. *See Eagan Econ. Dev. Auth. v. U-Haul Co. of Minnesota*, 787 N.W.2d 523, 530 (Minn. 2010) ("… We have taken judicial notice of public records and have said we have the inherent power to look beyond the record where the orderly administration of justice recommends it.") (internal citations omitted). Additionally, the Minnesota Supreme Court has formally recognized the Mortgage Electronic Registration System ("MERS"), a resource wherein members, which include originators, lenders, servicers, and investors, to assign home mortgage loans and other related interests without having to record each transfer in the local land recording offices where real estate securing the mortgage is located. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

County Recorders maintain official real estate documents for properties in their jurisdiction and their records are made publicly accessible. Further, MERS is an accepted servicer which has a free program called ServicerID which allows someone to figure out, using the property's Mortgage Identification Number (MIN), the current servicer of the Note. Therefore, the Court takes judicial notice of: (1) the Assignment of Mortgage recorded in the Office of the County Recorder of Anoka County, and (2) MERS and the MERS ServicerID database. As such, the Court finds that Defendant AmeriHome Mortgage is a valid assignee and is the servicer of the Mortgage, and the MIN linked to the Mortgage on MERS is the same as described on the Mortgage itself. For these reasons, both Plaintiff's claims IV and V fail.

## VII.    Plaintiff's Count VI - Unfair Business Practices.

Minnesota's Deceptive Trade Practices Act (DTPA) provides that a person, or in this case, a business, engages in a deceptive trade practice when, in the course of business, vocation, or occupation, they, in relevant part:

(1) pass off goods or services as those of another;
(2) cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
(5) represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
(13) engage in (i) unfair methods of competition, or (ii) unfair or unconscionable acts or practices, or
(14) engage in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. 325D.44, subds. 1-3, 5, 13-14.

Plaintiff's claim that Defendant, a loan servicer, has engaged in duplicitous and otherwise unfair business practices is an action under the DTPA, which generally prohibits the act of passing off goods and services and there own and creating confusion as to their origin. That is not the case here. Plaintiff's allegations that Defendant failed to respond adequately, in her opinion, to her inquires and to provide transparency regarding the Mortgage and the Note, do not create the type of confusion contemplated by the statute.

There appears to be no doubt as to the source, connection, or other material facts regarding the Mortgage resulting from the agreement between Defendant and Onward Financing. That alleged uncertainty Plaintiff experienced upon learning of their contract is not enough, particularly when the Assignment of Mortgage was recorded in the Office of the County Recorder of Anoka County, which is publicly available, and the freely accessible MERS

10

ServicerID database provides the name of the current owner and servicer of a promissory note for a property. Transfers of Mortgages and Notes are readily allowed by law and there is no evidence that it was performed in such a way that was competitively unfair or unconscionable to her as the mortgagor. Plaintiff supposedly being unaware of a transaction involving a loan in her name does not amount to unfair business practices.

## VIII.   Plaintiff's Count VII – Estoppel.

Promissory estoppel is an equitable doctrine that implies a contract in law exists where none exists in fact. *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). To establish promissory estoppel, a claimant must demonstrate that (1) the promisor made a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice. *See Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001).

Through this claim, Plaintiff seeks for the Court to, in the interests of justice, intervene and establish that a contract exists in law with Defendant where none existed in fact. The Court finds no injustice to remedy here. Defendant AmeriHome was acting within their rights and duties as a loan servicer, and their correspondence with Plaintiff do not contain any clear, definite promises which they intended to, and Plaintiff did, rely on. It has already been determined that the elements of an enforceable contract have not been demonstrated. Plaintiff essentially asks for an order finding that, because the information she received from Defendant, which they would not legally obligated to supply, was unsatisfactory to her, they should be bound to that and that a duty should be created to compel Defendant to provide more. The Court declines to enforce such a contract.

IX.    **Plaintiff's Count VIII - Removal, Release, and Revocation of Lender's Rights, Titles, and Interest.**

This claim falls under Plaintiff's previous assertions of lack of adequate consideration, good faith, and fair dealing, and the uncertainty created by the transaction. These allegations are deficient and do not form a justifiable basis for recission of the mortgage. All of Plaintiff's claims made in the Complaint shall hereby be dismissed.

**JWJ**